IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____
                                    )
**SUZANNE M. EGGLESTON** and        )
**FREDERICK LOVEJOY,**              )
                                    )
            **Plaintiffs,**     )
                                    )   Civil Action No. 3:02CV188 (WWE)
            v.                  )
                                    )
**E*TRADE SECURITIES, INC.,** *et al.,* )
                                    )
            **Defendants.**     )
_____)

**DEFENDANTS' REPLY MEMORANDUM
IN RESPONSE TO THE COURT'S SEPTEMBER 25, 2003 ORDER**

Plaintiffs have failed to address any of the legal or factual distinctions that distinguish this case from the *Specht* decision. Instead, Plaintiffs' brief consists solely of inaccurate factual claims, blatant misrepresentations, and recycled arguments already fully briefed that bear no relation to the *Specht* decision.[1] Plaintiffs signed a contract containing a conspicuously disclosed arbitration agreement. There exists no basis to relieve them of their obligation to arbitrate.

**A.**    **Plaintiffs' Fail to Address Critical Facts.**

Plaintiffs *cannot* deny that:

---

[1] Examples of Plaintiffs' attempt to reargue issues irrelevant to the *Specht* decision include Plaintiffs' contention in footnote 2 that Plaintiff Eggleston's failure to physically sign the account application relieves her of her obligation to arbitrate. This claim is meritless, as E*TRADE has made clear in previous briefs. *See* E*TRADE's Reply Memo. dated Oct. 31, 2002 at 6-7; E*TRADE's Response to Plaintiffs' Sur-Reply dated Dec. 10, 2002 at 2-4. Similarly, Plaintiffs' claim on pages 6-7 that the reference to the arbitration clause is ambiguous has already been addressed fully by E*TRADE. *See* E*TRADE's Reply Memo. dated Oct. 31, 2002 at 3-5; E*TRADE's Response to Plaintiffs' Sur-Reply dated Dec. 10, 2002 at 4-5.

- the 1998 version of the E*TRADE account application website contains links to the Customer Agreement and advises applicants to "Read our Customer Agreement." E*TRADE Opening Brief ("E*TRADE Open. Br."), Gutierrez Decl., Exh. A.

- the E*TRADE account application signed by Plaintiff Lovejoy advises Plaintiffs *on the very first page* to print the application, review it, and sign it (E*TRADE Open. Br., Exh. 2 at 1);

- Plaintiff Lovejoy reviewed the application—as evidenced by the *3 handwritten signatures* on the application (E*TRADE Open. Br., Exh. 2 at 3-4); and

- Plaintiff Lovejoy's signature appears *immediately below* his representation that *he received and read the E*TRADE Customer Agreement, and his acknowledgement that he was aware that the agreement contained an arbitration clause (*E*TRADE Open. Br., Exh. 2 at 3).

These facts standing alone distinguish this case from the facts at issue in *Specht*. Unable to address these facts on the merits, Plaintiffs resort to misrepresenting E*TRADE's assertions.

For example, at pages 4-5, Plaintiffs accuse E*TRADE of a "blatant misrepresentation" by quoting a portion of a sentence from E*TRADE's brief and making the bizarre claim that they were never advised of the existence of the Customer Agreement. E*TRADE's representation is entirely accurate. An applicant is advised early-on in the application process that the first step is to "***Read [E*TRADE's] Customer Agreement***." See E*TRADE Open. Br., Gutierrez Decl., Exh. A (Application Checklist). Once again, at the conclusion of the application process, after the applicant has printed the application, the applicant signs the application *immediately below the following representation:*

> **Please read and sign to apply for your E*TRADE account:**
>
> **I am of legal age to contract. <u>I acknowledge that I have received, read, and agree to be bound by the terms and conditions as currently set forth in the E*TRADE Customer Agreement and as amended from time to time.</u> . . .**
>
> * * *

> **I UNDERSTAND THAT THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION CLAUSE CONTAINED IN PARAGRAPH 31B OF THE E*TRADE CUSTOMER AGREEMENT.**
>
> **All account applicants must sign below:**
>
> **X  (Plaintiff Lovejoy's hand-written signature appears here)**

*See* E*TRADE Open. Br., Exh. 2 at 4 (capitalization in original; underlining added).

Plaintiffs had notice of the existence of the Customer Agreement and—more specifically—of the presence of an arbitration clause. Plaintiffs fail to even address these clear and binding representations.[2]

B.  **Plaintiffs' Remaining Arguments are Based on the Wrong Version of E*TRADE's Website and on the Wrong Exhibit.**

      Plaintiffs' effort at pages 2-3 to refute E*TRADE's description of the account application process is fatally flawed from the outset. The entire argument is based on the *current* version of the E*TRADE online account application process—not the process that was in place in 1998 when Plaintiffs opened their account. E*TRADE's account application process and website have changed significantly over time. *See* E*TRADE Open. Br.,

---

[2]  Plaintiffs also take issue with the E*TRADE's assertion that an applicant begins the application process by connecting to the E*TRADE application webpage through the internet. Plaintiffs' Brief ("Pl. Br.") at 2. This is precisely what an applicant must do to open an account. An applicant must first access E*TRADE's application webpage and begin entering information. The general E*TRADE webpage contains information on many topics (such as credit cards, mortgages, and home equity lines). Individuals seeking to open brokerage accounts must initiate the process by connecting to the E*TRADE account application page. Of course, the terms governing an E*TRADE brokerage account become relevant only when a user indicates an interest in opening such an account.

Gutierrez Decl., ¶¶4-6.[3]  For these reasons, Plaintiffs' argument is irrelevant and should be disregarded.

Similarly, Plaintiffs' argument at pages 5-6 concerning their receipt of the E*TRADE "Welcome Kit" is based on their review of the wrong exhibit.  The Welcome Kit, which contained a hardcopy of the Customer Agreement and was mailed to E*TRADE applicants in 1998, is discussed on the ***application that contains Mr. Lovejoy's signature***, which is attached ***as Exhibit 2*** to E*TRADE's Opening Brief – ***not as Exhibit 1***, as Plaintiffs mistakenly assume in their Brief.  See E*TRADE Open. Br., Exh. 2 at 1.

Moreover, Plaintiff Lovejoy's claim that he did not receive the E*TRADE Customer Agreement is based solely on the fact that "[his] file does not contain a . . . copy." Pl. Br., Exh. H, ¶3.  This claim is meaningless.  Plaintiff Lovejoy's own Declaration makes clear that he did not retain communications with E*TRADE, and Plaintiffs had to request copies of all communications from E*TRADE in order to prepare their taxes.  Pl. Br., Exh. H, ¶6.  Thus, unlike in *Specht*, Plaintiffs received a hard copy of the Customer Agreement containing the arbitration clause.

## C.     Conclusion

Plaintiffs have failed to establish that the *Specht* decision bears any relation to this dispute.  The issue before the Court is whether an experienced attorney who signs a contract directly under: (i) his representation that he received and read all terms of the contract; and (ii) his acknowledgment that the contract contained an arbitration clause, is bound

---

[3] Plaintiffs' attack on Mr. Gutierrez's Declaration is misguided.  Mr. Gutierrez's averred that his Declaration was based on personal knowledge, and that his responsibilities include being familiar with the process for opening new accounts.  *See* E*TRADE Op. Br., Gutierrez Decl., ¶¶1-3.

to arbitrate disputes falling within the scope of the agreement.  Clearly, the answer is yes, and this action should be stayed pending arbitration.

Dated:  October 31, 2003 Respectfully submitted,

_____
James A. Budinetz, Esquire
Ct. Fed. Bar No.: ct16068
Pepe & Hazard LLP
225 Asylum Street
Goodwin Square
Hartford, CT  06103
e-mail: jbudinetz@pepehazard.com
Telephone:  860.241.2693
Facsimile:  860.522.2796

Attorneys for Defendants
 E*TRADE SECURITIES, INC.,
 E*TRADE GROUP, INC. (erroneously
 sued as E*TRADE, INC.), and
 STEPHEN TACHIERA

OF COUNSEL:

Douglas P. Lobel
MORGAN, LEWIS & BOCKIUS LLP
1600 Tysons Boulevard, 12th Floor
McLean, Virginia   22102
e-mail:  dlobel@morganlewis.com
Telephone:  (703) 918-1670
Facsimile:  (703) 918-1999

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 31st day of October 2003, served a copy of Defendants' Reply Memorandum in Response to Court's September 25, 2003 Order by causing a copy of same to be delivered by United States mail, first class postage prepaid, to:

>Frederick A. Lovejoy, Esq.
>276 Center Road
>P.O. Box 56
>Easton, CT  06612

>John F. X. Peloso, Esq.
>Robinson & Cole, LLP
>Financial Centre
>695 East Main Street
>Stamford, CT  06904-2305

>_____
>James A. Budinetz