```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

SUZANNE M. EGGLESTON and        :
FREDERICK LOVEJOY,              :      3:02cv188(WWE)
     Plaintiffs,                :
v.                              :
E*TRADE SECURITIES, INC. and    :
STEPHEN TACHIERA,               :
     Defendants.                :
```

**RULING ON DEFENDANTS' MOTION TO STAY AND TO COMPEL ARBITRATION**

In this action, the plaintiffs, Suzanne Eggleston and Frederick Lovejoy, claim that the defendants, E*TRADE Securities and Stephen Tachiera, made unauthorized transactions in their E*TRADE brokerage account and improperly assessed interest charges to the account. The defendants move to stay the proceedings and compel arbitration as required by a broad arbitration agreement contained in E*Trade's Customer Agreement. For the following reasons, defendants' motion will be denied due to disputed issues of fact.

## BACKGROUND

The parties have submitted affidavits with supporting exhibits. By affidavit, Frank Gutierrez, Senior Manager for Software Engineering and Web Development, avers that the 1998 website prominently featured hypertext links that enable applicants to connect directly to the terms of E*TRADE's Customer Agreement. Attached to his affidavit are webpages from the 1998 website. Gutierrez states that the website is modified from time to time, and it is possible that the website appeared slightly different on the particular date that plaintiff Lovejoy applied

1

for an account. However, he avers that the references and links to the Customer Agreement have always been prominently displayed.

Plaintiff Lovejoy applied online for an E*Trade account in December, 1998. Once plaintiff entered the requested information concerning his address, income, net worth and investment experience into an online form, the online portion of the application process was complete. Plaintiff Lovejoy was then directed to print a copy of the application, review and physically sign the application in three separate locations. Plaintiff's second signature appeared immediately below the following:

> **Please read and sign to apply for your E*Trade account:**
>
> I am of legal age to contract. I acknowledge that I have received, read and agree to be bound by the terms and conditions as currently set forth in the E*TRADE Customer Agreement and as amended from time to time....
>    *   *   *
> **I UNDERSTAND THAT THIS ACCOUNT IS GOVERNED BY A PRE-DISPUTE ARBITRATION CLAUSE CONTAINED IN PARAGRAPH 31B OF THE E*TRADE CUSTOMER AGREEMENT.**
>
> **All account applicants must sign below:**

After signing the New Account Application, plaintiff Lovejoy mailed the application to E*Trade, along with an initial deposit. Upon receipt of the application, E*TRADE's practice was to send to a new applicant a "welcome kit," which contained a hard copy of the Customer Agreement.

In his affidavit, plaintiff Lovejoy admits that he no longer remembers exactly what appeared on E-Trade's screens, but states that a full webpage would not have fit on his screen. He avers that he would have printed out any information referred to in a

2

link.  Further, he states that his file related to his E*TRADE account does not contain a copy of the Customer Agreement, and therefore, asserts that he was never provided with a hard copy of the Customer Agreement.

## DISCUSSION

Congress enacted the Federal Arbitration Act, 9 U.S.C. Sections 1 et seq., to codify a strong national policy in favor of arbitration.  Section 2 provides:

> A written provision in. . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . . shall be valid, irrevocable, and enforceable.

Courts confronted with a dispute between parties subject to arbitration must "construe arbitration clauses as broadly as possible."  S.A. Mineracao de Tridade-Samitri v. Utah International, Inc., 745 F. 2d 190, 194 (2d Cir. 1984). "Arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  McMahan Securities Co. v. Forum Capital Markets L.P., 35 F. 3d 82, 88 (2d Cir. 1994).  In evaluating a motion under the FAA, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Here, the Court must consider two issues: (1) whether the parties agreed to arbitrate; and (2) whether the scope of the arbitration clause covers the plaintiff's claims.  Mehler v. Ther Terminix Int'l Co., L.P., 205 F. 3d 44, 47 (2d Cir. 2000).  If

the making of an arbitration agreement is in issue, "the court shall proceed summarily to the trial thereof."  9 U.S.C. § 4.

In <u>Specht v. Netscape Communications Corp.</u>, 306 F. 3d 17 (2d Cir. 2002), the Second Circuit held that an arbitration provision within a website offering a free software plug-in known as "SmartDownload" was not enforceable where the website failed adequately to alert users to the existence of licensing terms that contained the arbitration agreement, and did not require users unambiguously to manifest assent to those terms as a condition of downloading the product.  The Court acknowledged the rule that a party can avoid the terms of a contract where "the writing does not appear to be a contract and the terms are not called to the attention of the recipient."  <u>Id.</u> at 30.

Defendants assert that this case presents circumstances unlike that of <u>Specht</u> because the first webpage alerted plaintiff to the existence of a customer agreement and instructed the applicant to read it.  Further, the plaintiff was required to print out the application, and physically sign the document underneath an acknowledgment that he had read and agreed to be bound by the terms of the Customer Agreement, and that his account would be "GOVERNED BY A PRE-DISPUTE ARBITRATION CLAUSE CONTAINED IN PARAGRAPH 31B OF THE E*TRADE CUSTOMER AGREEMENT." Thus, the defendants argue that unlike the <u>Specht</u> plaintiffs, plaintiff Lovejoy was required to unambiguously manifest his assent to the terms of the Customer Agreement.

The declaration of Frank Gutierrez avers that "E*TRADE has always prominently featured hypertext links that enable

applicants to connect directly to the terms of E*TRADE's Customer Agreement."  However, the Court cannot assess from the record how prominent or accessible those links appeared to the plaintiff Lovejoy, who indicates that he does not remember them, and was unsuccessful in a recent attempt to print out the Customer Agreement.  Plaintiff Lovejoy claims further that he never received the hard copy of the Customer Agreement in the mail from E*TRADE.

It is undisputed that plaintiff Lovejoy signed under acknowledgments that clearly alerted him in capital letters to the existence of arbitration terms that would govern his account. However, plaintiffs contend that the terms of the arbitration agreement are ambiguous and therefore cannot be enforced as contractually binding. Hartford Elec. Applicators of Thermalux, Inc. v. Alden, 169 Conn. 1777, 182 (1975).  A provision in a contract is ambiguous where it is reasonably susceptible to more than one reading.  Metropolitan Life Ins. Co. v. Aetna Ca. And Sur.Co., 255 Conn. 295, 305 (2001).[1]  Plaintiff Lovejoy asserts that he did not understand that the words "pre-dispute arbitration clause" referred to binding arbitration.  Plaintiffs cite Kingston v. Ameritrade, Inc., 302 Mont. 90, 97 (2000), wherein the account application signed and submitted by the plaintiffs stated the following:

> I have received and read the terms and conditions that will govern my account.  I agree to be bound by these terms and conditions, as amended from

---

[1] The Court assumes for purposes of ruling on this motion that Connecticut law applies.

5

> time to time, and request a cash and cash margin account to be opened in the name(s) set forth below.
>
> **This brokerage account agreement contains pre-dispute arbitration clauses in Paragraphs 6 and 7 of the Terms and Conditions section.**

By affidavit, the Kingstons denied that they ever received the referenced Terms and Conditions document, and the Terms and Conditions were not listed on the website. The Montana Supreme Court held that a substantial dispute existed as to whether the plaintiffs had agreed to binding arbitration since they "had no indication that they were agreeing to binding arbitration or that arbitration was their *exclusive* remedy" when they signed the account application.

In this instance, the words "pre-dispute arbitration clause" are explained in the Customer Agreement. However, plaintiffs claim that they were not aware of the hyperlinks giving access to the Customer Agreement, and that they never received a hardcopy of the Customer Agreement. The record presented to Court does not adequately resolve whether plaintiffs had adequate access to read the terms of the Customer Agreement through hyperlinks or a hardcopy.

Accordingly, the Court finds that these disputed facts relevant to formation of an agreement to arbitrate require a trial.

## **CONCLUSION**

For the foregoing reasons, the defendants' motion to stay the proceedings and compel arbitration [doc 9-1 & 9-2] is DENIED.

The parties are instructed to provide the Court with a proposed schedule of discovery and trial availability by December 20, 2003.

_____
Warren W. Eginton,
Senior United States District Judge


    Dated this \_\_\_\_\_ day of November, 2003 at Bridgeport, Connecticut.