IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUZANNE M. EGGLESTON and<br>FREDERICK LOVEJOY,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>E*TRADE SECURITIES, INC., *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 3:02CV188 (JBA)<br><br><br>NOVEMBER 18, 2004 |

**DEFENDANTS' OBJECTIONS TO PLAINTIFFS'
PROPOSED CONCLUSIONS OF LAW**

　　　　Defendants E*TRADE Securities, Inc., E*TRADE Financial Corp. (erroneously sued as E*TRADE Inc.) and Stephen Tachiera (collectively "E*TRADE") respectfully submit their objections to Plaintiffs' Proposed Conclusions of Law, which are appended to E*TRADE's Trial Memorandum.

　　　　1.　　　　E*TRADE agrees that the terms of a contract should be afforded their plain meaning. Similarly, E*TRADE does not take issue with Plaintiffs' lengthy recitation of the meaning of the prefix "pre." It is, however, undeniable that the terms of an agreement must also be read *coherently*. *See, e.g., Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 503 (2000) ("The intent of the parties is to be ascertained by a

fair and *reasonable* construction of the written words....") (emphasis supplied).

Plaintiff Lovejoy asserts that he was confused by the term "pre-dispute arbitration" because he thought it required him to arbitrate with E*TRADE *before* a dispute arose (despite his familiarity with the term). This is nonsense. Since arbitration is "a method of dispute resolution," *see* Black's Law Dictionary (7th Ed. 1999), it makes no sense to suggest that an arbitration could *precede* a dispute. Indeed, it would be impossible for two parties to arbitrate *anything* before a dispute between them had arisen!

Instead, as E*TRADE's Proposed Conclusions of Law makes clear, a "pre-dispute arbitration" clause or agreement sensibly refers to two parties entering into an agreement to arbitrate disputes that may arise *in the future*. It is an agreement to arbitrate reached *pre-dispute*. This can be contrasted with an agreement to arbitrate reached *after* a dispute has arisen. Precisely this term, with precisely this meaning, is in common usage, and has been recognized as unambiguous by the courts across the country. *See* Defendants' Proposed Conclusions of Law at ¶ 17.

2. The Montana state court case, *Kingston v. Ameritrade, Inc.*, 302 Mont. 90 (2000), is materially distinct from the case at bar, and is unpersuasive. First, in *Kingston*, unlike here, "the terms and conditions [including the arbitration provision] were not listed on Ameritrade's website." *Id.* at 933. The *Kingston* court was concerned that the plaintiffs

"had no indication that they were agreeing to *binding* arbitration or that arbitration was their *exclusive* remedy in resolving any disputes with the Ameritrade." *Id.* (emphasis in original). Also, the Ameritrade application did not clearly reference and incorporate a separate document.

Here, by contrast, the E*TRADE application made clear—in all capital letters and in bold-faced type—that a separate Customer Agreement containing an arbitration clause governed the account. Lovejoy acknowledged receiving the Customer Agreement directly above his signature. Also unlike in *Kingston*, the Customer Agreement was accessible to Lovejoy online during the application process via a prominently displayed hyperlink and was also provided via mail. The E*TRADE Customer Agreement, in turn, states clearly that arbitration is the exclusive remedy to resolve disputes and that arbitration is binding on the parties. Moreover, the *Kingston* court was not applying Connecticut law, which holds that a party is bound by the terms of documents incorporated into his contract and that the term "pre-dispute arbitration agreement" is unambiguous. *See* E*TRADE's Proposed Conclusions of Law at ¶¶ 9, 17.

Also, unlike here, there is no indication that the plaintiffs in *Kingston* were sophisticated investors or attorneys, like Lovejoy. Lovejoy was well familiar with the meaning of the phrase "pre-dispute arbitration clause," having encountered the phrase in four

(4) other brokerage account applications before applying for an E*TRADE account. In each instance, the phrase in the application that Lovejoy signed referred to a binding, mandatory arbitration agreement. Lovejoy also knew-well that it was customary in the securities industry for customers to arbitrate disputes with brokerage firms. *See* E*TRADE's Proposed Conclusion of Law at ¶¶ 18-20. Indeed, Lovejoy arbitrated a dispute over another of his trading accounts with People's Securities.

3.   *Specht v. Netscape Communications, Corp.*, 306 F.3d 17 (2d Cir. 2002), in which the Court applied *California* law, is also materially distinct from this case. First and foremost, it was critical to the Court's holding that the ***plaintiffs did not even know that they were entering into a contractual relationship*** when they were invited to download "free" software at the click of a button. *Id.* at 31. In this case, of course, there is no question that Lovejoy knew he was entering into a contractual relationship with E*TRADE when he applied for a brokerage account, printed the account application, signed the application three times, and mailed it to E*TRADE along with a check for $2,000. In fact, Lovejoy admits that he entered into a contract with E*TRADE, and in fact, is suing to enforce that contract.

Furthermore, in *Specht*, the issue was whether users "saw the notice" of the software's license terms. Indeed, the license terms and conditions in *Specht* were "hidden" in a submerged screen that was far removed from the button that began the download, and

required multiple hyperlinks to even find—even assuming that a user knew that terms and conditions governed their "free" software download. *Id.* at 23-25, 32. In this case, Lovejoy was given every opportunity to link to the E*TRADE Customer Agreement from virtually the inception of the application process by clicking on a prominently displayed hyperlink. E*TRADE used all capital letters and bold-faced type on its application to alert applicants to the existence of the E*TRADE Customer Agreement and the arbitration clause, and even required applicants to sign immediately under an acknowledgment that they had received and agreed to the terms of the Customer Agreement.

Also, unlike in *Specht*, when E*TRADE approved Lovejoy's application, E*TRADE sent him a hard copy of the Customer Agreement as part of the welcome kit mailed to new account holders. *Specht* specifically recognizes that "receipt of a physical document containing contract terms or notice thereof is frequently deemed ... a sufficient circumstance to place the offeree on inquiry notice of those terms." *Id.* at 31; *see also In Re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 401 n.2 (S.D.N.Y. 2003) (noting that *Specht* held, under California law, "that receipt of a physical document containing contractual terms or notice thereof, puts a person on inquiry notice of all the terms in that physical document" and enforcing the arbitration provision in that case).

In fact, *Specht* supports E*TRADE's assertion that it is irrelevant whether Lovejoy

was confused by the use of the term, "pre-dispute arbitration." The *Specht* Court's reasoning makes clear that there is no requirement that a party provide any special notice of an arbitration provision, so long as the other party has sufficient notice that there is another document that contains terms that govern the parties' relationship. *Id.* at 28-29. This is entirely consistent with Connecticut law. *See* E*TRADE's Proposed Conclusion of Law at ¶ 9.

Dated: November 18, 2004

Respectfully submitted,

E*TRADE Securities, Inc., E*TRADE Group, Inc. (erroneously sued as E*TRADE, Inc.), and Stephen Tachiera

By _____
James A. Budinetz, Esquire
Ct. Fed. Bar No.: ct16068
Pepe & Hazard LLP
225 Asylum Street
Goodwin Square
Hartford, CT 06103
e-mail: jbudinetz@pepehazard.com
Telephone: 860.241.2693
Facsimile: 860.522.2796

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 18th day of November 2004, sent the foregoing via first class mail, postage prepaid, to:

>Frederick A. Lovejoy, Esq.
>P.O. Box 56
>Easton, CT  06612

James A. Budinetz