part. In either event, she is bound, as is Dr. Blatt, by the written arbitration agreement contained in DX J. n2 That is the agreement in effect at the time the account terminated. In consequence, all disputes at bar are covered by written agreements to arbitrate which are binding upon both plaintiffs.

n2 There was considerable evidence at trial concerning other documents to which Dr. Blatt affixed both his signature and his wife's. These related to financial assistance to a family named Sanders, social acquaintances of the Blatts. Dr. Blatt signed his and Mrs. Blatt's names to Shearson forms directing the transfer of $18,000 to the Sanders' Shearson account, and placing the Blatt account as security for the Sanders' margin account.

Mrs. Blatt testified that her husband extended this largesse to the Sanders not only without her knowledge, but against her expressed wish not to assist the Sanders.

If that is true, Dr. Blatt risked not only his money but his marriage. But I need not resolve credibility issues because the matter is entirely peripheral. I am concerned only **[*14]** with whether or not Mrs. Blatt is bound by a written agreement to arbitrate claims against defendants. For the reasons stated in this opinion, I hold that she is.

III.

Both plaintiffs n3 are bound by a written agreement to arbitrate their claims against both defendants, n4 to the extent that the arbitration agreement is legally enforceable.

n3 I have dealt in this opinion with the contested status of Mrs. Blatt. No plausible reason is suggested why Dr. Blatt should not be bound by his own signatures. To the extent that Dr. Blatt contests the genuineness of his signature on DX E, I have held against him.

n4 The motion to compel arbitration is made on behalf of both Shearson and its employee, Lux. Plaintiffs do not suggest that the arbitration agreement covers only claims against the brokerage firm, and not its employee. I would reject such an argument if made. Cf. Finkle & Ross, supra (both firm and individual representative moved successfully to compel arbitration on basis of comparable customer's agreement).

As to state law claims, the arbitration agreement is enforceable, and plaintiffs are required to submit those claims to arbitration forthwith. That **[*15]** is the teaching of Dean Witter Reynolds Inc. v. Byrd, supra.

The 1934 Act federal claims remain for consideration. A number of inferior federal courts perceived in Byrd sufficiently strong manifestations of Supreme Court thinking to hold that such federal claims must be arbitrated as well. See, e.g., Finkle & Ross, supra, 622 F.Supp. at 1509, citing inter alia McMahon v. Shearson/American Express Inc., 618 F.Supp. 384, 387-89 (S.D.N.Y. 1985). But the Second Circuit reversed McMahon, 788 F.2d 94 (2d Cir. 1986), holding that 1934 Act claims are not arbitrable. The Supreme Court recently granted certiorari.

There is no point in proceeding simultaneously with arbitration of state and common law claims and litigation of federal claims if the Supreme Court is about to hold that the federal claims are also arbitrable. In the exercise of my discretion, I stay all further proceedings in this Court on plaintiffs' federal claims until the Supreme Court issues its mandate in McMahon.

CONCLUSION

I make the following Order:

1. Plaintiffs' state law and common law claims will be referred to arbitration in accordance with the written agreement to [*16] arbitrate quoted supra. This Court will retain jurisdiction to consider any post-award motions that may be made under the Federal Arbitration Act.

2. All proceedings in this Court arising out of the Securities Exchange Act of 1934 and accompanying regulations are stayed pending this Court's further order.

3. The Clerk will place this case on the Court's suspense docket.

Dated: New York, New York, October 30, 1986

CHARLES S. HAIGHT, JR., U.S.D.J.

Service: **Get by LEXSEE®**
Citation: **1986 us dist lexis 18344**
View: Full
Date/Time: Friday, February 11, 2005 - 11:51 AM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any Shepard's signal to Shepardize® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 15720　　　　　　　　　　　　Page 1 of 4

Case 3:02-cv-00188-JBA　　Document 95-5　　Filed 02/11/2005　　Page 3 of 9

Service: **Get by LEXSEE®**
Citation: **2002 us dist lexis 15720**

*2002 U.S. Dist. LEXIS 15720, \**

LINDA L. DOWNER and HUNT B. DOWNER versus FRED SIEGEL, THE SIEGEL GROUP, INC., DAIN RAUSCHER, INC., ET AL

CIVIL ACTION No. 02-1706 SECTION: E/1

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

2002 U.S. Dist. LEXIS 15720

August 9, 2002, Decided
August 9, 2002, Filed; August 9, 2002, Entered

**DISPOSITION:** [*1] Defendants motions to Stay Proceedings Pending Arbitration granted.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff husband signed an individual retirement account (IRA) brokerage account agreement with defendant brokerage corporation. The husband and plaintiff wife signed an asset management agreement with the brokerage's predecessor. Plaintiffs, the husband and the wife, sued defendants, the brokerage, another corporation, and an agent, alleging that defendants mishandled the accounts. Defendants moved to stay proceedings pending arbitration.

**OVERVIEW:** Plaintiffs did not deny that their claims implicated the two brokerage account agreements containing pre-dispute arbitration clauses, but argued that those agreements were void ab initio because they were fraudulently induced in their purchase of a debenture. However, the court found that the fraud alleged went to the management of the account after entering into the agreements, not in the inducement to enter into the agreements. Plaintiffs next argued that (1) the IRA agreement was not enforceable against the wife because she did not sign it, (2) the second agreement was unenforceable because their signatures were not dated, and (3) the second agreement was with the predecessor, not the brokerage. First, as successor to the predecessor, the brokerage was entitled to invoke the asset management arbitration agreement. Second, § 3 of the Federal Arbitration Act did not require that the agreement be signed in order to enforce an arbitration agreement contained within it. Finally, pursuant to La. Civ. Code Ann. art. 2346, the husband's signing of the IRA account agreement to manage the community property was valid as to the wife's community interest in that property as well as his.

**OUTCOME:** Defendants' motions to stay proceedings pending arbitration were granted.

**CORE TERMS:** arbitration clause, brokerage account, pre-dispute, debenture, arbitration agreement, community property, enforceable, manage, inducement

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
**HN1** The Federal Arbitration Act provides that a written arbitration clause in a contract involving commerce shall be valid, irrevocable, and enforceable. 9 U.S.C.S. § 2. The Act leaves no place for the exercise of discretion, but instead mandates that a

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 15720 Page 2 of 4

Case 3:02-cv-00188-JBA   Document 95-5   Filed 02/11/2005   Page 4 of 9

stay be issued. More Like This Headnote

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
**HN2** Section 3 of the Federal Arbitration Act does not require that an agreement be signed in order to enforce an arbitration agreement contained within it. More Like This Headnote

Family Law > Divorce, Dissolution & Spousal Support > Property Distribution > Community Property
**HN3** See La. Civ. Code Ann. art. 2346.

**COUNSEL:** For LINDA L DOWNER, HUNT B DOWNER, plaintiffs: Joseph L. Waitz, Waitz & Downer, Houma, LA.

For FRED SIEGEL, SIEGEL GROUP INC, WAYNE E TRAINA, defendants: George C. Freeman, III, Meredith A. Cunningham, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA.

For RBC DAIN RAUSCHER INCORPORATED, defendant: George Denegre, Jr., John C. Anjier, Liskow & Lewis, New Orleans, LA.

**JUDGES:** MARCEL LIVAUDAIS, JR., United States District Judge.

**OPINIONBY:** MARCEL LIVAUDAIS, JR.

**OPINION: ORDER AND REASONS**

This matter is before the Court on defendants' Motions to Stay Proceedings Pending Arbitration. Record document # s 10 and 15. Plaintiffs oppose the motions, which were submitted for hearing on August 7, 2002. For the reasons that follow, the motions to stay are granted.

**BACKGROUND**

On November 3, 1997, plaintiff Hunt Downer entered into and signed an IRA brokerage account agreement with Dain Rauscher which included a pre-dispute arbitration clause. Several weeks later, both Hunt and Linda Downer signed an additional asset management agreement with Rauscher Pierce Refsnes ("RPR"), a predecessor [*2] to Dain Rauscher, which also included a pre-dispute arbitration clause. On or about November 27, 1997, the Downers agreed to purchase a debenture at the suggestion of Fred Siegel, an agent of Dain Rauscher. Unhappy with the results of that investment, the Downers sued defendants in state court alleging that defendants mishandled the accounts, and in an amended petition alleged deception and fraud in the inducement of their purchase of the debenture, breach of fiduciary duties and violation of NASDAQ Rules of Conduct. Defendants removed the action and filed the motions at bar.

**ANALYSIS**

**HN1** The Federal Arbitration Act ("FAA") provides that a written arbitration clause in a contract involving commerce "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "The Act leaves no place for the exercise of discretion ..., but instead mandates" that a stay be issued. Dean Witter Reynolds, Inc., v. Byrd., 470 U.S. 213, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985).

The Downers do not deny that their claims implicate the two brokerage account agreements

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 15720   Page 3 of 4

Case 3:02-cv-00188-JBA   Document 95-5   Filed 02/11/2005   Page 5 of 9

containing the pre-dispute arbitration clauses, but argue that those agreements are void [*3] *ab initio* because they were fraudulently induced in their purchase of the debenture. The fraud alleged goes to the management of the account *after* entering into the agreements, not in the inducement to enter into the brokerage account agreements. The Downers next argue that the IRA Agreement is not enforceable against Linda Downer because she did not sign it, that the second agreement is unenforceable because their signatures are not dated, and finally that the second account agreement signed was with RPR, not Dain Rauscher.

First, as successor to RPR, Dain Rauscher is entitled to invoke the asset management arbitration agreement. Second, HN2 Section 3 of the FAA does not require that an agreement be signed in order to enforce an arbitration agreement contained within it. Finally, HN3 Louisiana Civil Code art. 2346 provides that "each spouse acting alone may manage, control, or otherwise dispose of community property unless otherwise provided by law." Hunt Downer's signing of the IRA account agreement to manage the community property is valid as to Linda Downer's community interest in that property as well as his.

Accordingly, defendants motions to Stay Proceedings Pending Arbitration [*4] is **GRANTED**.

**IT IS ORDERED** that this case, and any related lawsuits pending in state court, **BE AND IS HEREBY STAYED PENDING ARBITRATION,**

**IT IS FURTHER ORDERED** that the Clerk of Court mark this action closed for statistical purposes and place this matter in a Civil Suspense File;

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction and the matter shall be restored to the trial docket if circumstances change this action, upon motion of a party, within 30 days of any such change of circumstances, so that it may proceed to final disposition. This order shall not prejudice the rights of the parties to this litigation.

New Orleans, Louisiana, August 9, 2002.

**MARCEL LIVAUDAIS, JR.**

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2002 us dist lexis 15720**
View: Full
Date/Time: Friday, February 11, 2005 - 11:52 AM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 15720

Case 3:02-cv-00188-JBA Document 95-5  Filed 02/11/2005  Page 6 of 9

Page 4 of 4

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **1999 us app lexis 30447**

*1999 U.S. App. LEXIS 30447, \**

LIMONIUM MARITIME, S.A., Plaintiff-Appellant, - v. - MIZUSHIMA MARINERA, S.A., et al., Defendants-Appellees, ANNA LYGNOS, as Executrix of the Estate of Peter Lygnos, and NICHOLAS LYGNOS, as Executor of the Estate of Peter Lygnos, Defendants.

Nos. 99-7219(L), 99-7249(XAP)

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

1999 U.S. App. LEXIS 30447

November 18, 1999, Decided

**NOTICE:** **[\*1]** RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 1999 U.S. App. LEXIS 36881.

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of New York (Chin, Judge).

**DISPOSITION:** AFFIRMED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant challenged the denial by the United States District Court for the Southern District of New York of its motion to compel arbitration without prejudice. The court declined to decide whether approximately 117 nonsignatory appellees were parties to a charter agreement until after the completion of arbitration proceedings against the charter signatory and guarantor.

**OVERVIEW:** Appellant challenged the denial without prejudice of its motion to compel arbitration. The court declined to decide whether approximately 117 nonsignatory appellees were parties to a charter agreement until after the completion of arbitration proceedings against the charter signatory and guarantor. Appellant argued that the district court had no discretion to exercise this control over its docket but rather was bound by 9 U.S.C.S. § 4 to determine appellees' status under the charter agreement before the currently pending arbitration proceedings could ensue. Under the Federal Arbitration Act, district courts must compel arbitration unless the "making" of an arbitration agreement is in question. A nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency. The court's deferral of the status of the nonsignatory appellees was done for purposes of judicial economy, which was not an abuse of discretion. The denial of the motion was affirmed.

**OUTCOME:** The denial without prejudice of appellant's motion to compel arbitration was affirmed. The denial was not an abuse of discretion because deferral of the status of nonsignatory appellees was done for purposes of judicial economy.

**CORE TERMS:** nonsignatory, arbitration, arbitration agreement, charter, guarantor,

signatory, compel arbitration, deferred, ongoing

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Alternative Dispute Resolution > Mandatory ADR

**HN1** Under the Federal Arbitration Act, district courts must compel arbitration unless the "making" of an arbitration agreement is in question. Whether a person is a party to an arbitration agreement is included within the statutory issue of the making of the arbitration agreement.  More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Mandatory ADR

**HN2** A nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency.  More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

**HN3** As a general rule, appellate courts are very reluctant to interfere with district judges' management of their very busy dockets.  More Like This Headnote

Governments > Courts > Authority to Adjudicate

**HN4** The district court has broad discretion to stay proceedings as an incident to its power to control its own docket.  More Like This Headnote

**COUNSEL:** Appearing for Appellants: Mary Ann C. Marlowe, Keane & Marlowe, East Brunswick, New Jersey.

**JUDGES:** Present: HONORABLE RALPH K. WINTER, Chief Judge, HONORABLE RICHARD J. CARDAMONE, HONORABLE CHESTER J. STRAUB, Circuit Judges.

**OPINION:** SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Limonium Maritime, S.A., appeals from Judge Chin's denial of its motion to compel arbitration without prejudice for renewal. The district court declined to decide whether approximately 117 nonsignatory appellees were parties to a charter agreement until after completion of arbitration proceedings against the charter signatory and guarantor. See Limonium Maritime, S.A. v. Mizushima Marinera, S.A., 1999 U.S. Dist. LEXIS 20010, No. 96 Civ. 1888, 1999 WL 46721, at *8-9 (S.D.N.Y. Feb. 1, 1999). Appellant argues that the district court had no discretion **[*2]** to exercise this control over its docket but rather was bound by 9 U.S.C. § 4 to determine appellees' status under the charter agreement before the currently pending arbitration proceedings could ensue. We disagree.

**HN1** Under the Federal Arbitration Act, district courts must compel arbitration unless "the 'making' of an arbitration agreement . . . is in question." Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1063 (2d Cir. 1993) (quoting McAllister Bros., Inc. v. A & S Transp. Co., 621 F.2d 519, 522 (2d Cir. 1980)). "Whether a person is a party to [an] arbitration agreement . . . is included within the statutory issue of 'the making of the arbitration agreement,'" Tehran-Berkeley Civil and Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 816 F.2d 864, 868 (2d Cir. 1987) (quoting Interocean Shipping Co. v. National Shipping & Trading Corp., 462 F.2d 673, 677 (2d Cir. 1972)), and "a **HN2** nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency,'" Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) **[*3]** (quoting McAllister Bros., 621 F.2d at 524).

In Tehran-Berkeley and McAlister Bros., we reversed district court dismissals of petitions to compel arbitration for nonsignatory parties without holding an evidentiary hearing. See Tehran-Berkeley, 816 F.2d at 868; McAllister Bros., 621 F.2d at 524. However, in each of those cases, the district court summarily determined that the nonsignatories were not parties to the agreements in question. See Tehran-Berkeley, 816 F.2d at 867; McAllister Bros., 621 F.2d at 521. We see nothing in the Act that forbids the order of proceedings selected by the district court.

Nor do we see any abuse of discretion by that court. The district court deferred consideration of whether the nonsignatories were parties until after the arbitration was completed for the charter agreement's signatories and guarantor, for sound reasons of judicial economy. See 1999 WL 46721, at *9. $^{HN3}$ As a general rule, "we are very reluctant to interfere with district judges' management of their very busy dockets." Whiting v. Lacara, 187 F.3d 317, 320 (2d Cir. 1999); see also Clinton v. Jones, 520 U.S. 681, 706, 137 L. Ed. 2d 945, 117 S. Ct. 1636 (1997) [*4] ("The $^{HN4}$ District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). The district court deferred adjudication of the status of the nonsignatories because there would be no need to address that issue if the ongoing arbitration was decided adversely to the signatories and guarantor. To adjudicate the nonsignatories status first while delaying arbitration would not expedite final resolution of the case but might actually delay it. If appellants did not prevail on that issue, the need for an arbitration proceeding might remain. Moreover, were we to reverse the district court, the ongoing arbitration would have to cease under the very principles that appellants claim to be the law, causing further delay.

We therefore affirm.

Service: **Get by LEXSEE®**
Citation: **1999 us app lexis 30447**
View: **Full**
Date/Time: **Friday, February 11, 2005 - 11:53 AM EST**

\* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
⊗ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.